IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| SILKE BROUSSARD, Individually and as Representative of the Estate of LIAM BROWN, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> MICHELIN NORTH AMERICA, INC., d/b/a B.F. GOODRICH COMPANY, <br><br> Defendant. | § § § § § § § § § § § § § § § <br><br> CIVIL ACTION NO. _____ |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE COURT:

Plaintiff Silke Broussard, Individually and as Representative of the Estate of Liam Brown, deceased ("Plaintiff"), files this Original Complaint against Michelin North America, Inc., d/b/a B.F. Goodrich Company ("Defendant"), and would show the Court as follows:

## I.
### PARTIES

1.01   At all times relevant, Plaintiff was a citizen and resident of Colorado Springs, Colorado. Plaintiff is the natural mother of minor Liam Brown, deceased. Plaintiff, Silke Broussard is the biological mother of Liam Brown, deceased.

1.02   Defendant Michelin North America Inc., is a foreign business corporation, organized and formed under the laws of the State of New York.  Thus, Defendant is a citizen of the State of New York.  Defendant regularly does business in the State of Texas.  Defendant may be served by forwarding the Summons and a copy of this Original Complaint to its registered agent, CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

1.03    B.F. Goodrich Company is a wholly-owned subsidiary of Defendant Michelin North America Inc.

## II.
### VENUE AND JURISDICTION

2.01    Since complete diversity of citizenship exists between the parties, and the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs, this court has diversity jurisdiction under 28 U.S.C. §1332.

2.02    Venue is proper in the Northern District of Texas pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in Hale County, Texas, which is in the Northern District. Plaintiff would show that the incident at issue occurred along Interstate Highway 27 in Hale County, Texas.

## III.
### FACTUAL BACKGROUND

3.01    This lawsuit arises out of a vehicular accident that occurred on or about July 5, 2018 along Interstate Highway 27 in Hale, County, Texas. At the time of the accident, 14-year-old Liam Brown, deceased, ("Decedent") was lawfully riding as a passenger in a 1999 Ford F250 pickup truck, operated by Plaintiff's fiancé, Ervin Eugene Sheppard Jr, deceased. Suddenly and without warning, the front driver's side tire detreaded and failed causing the truck to leave the roadway, cross the center median, crash, and roll. As a result of the tire failure, Decedent suffered severe injuries from which he died.

## IV.
### STRICT LIABILITY AND NEGLIGENCE CLAIMS AGAINST DEFENDANT

4.01    The truck tire which failed and is the subject of this suit is a B.F. Goodrich All Terrain, size LT275/70R18 125/122R ("the Tire"), which was designed, manufactured, constructed, marketed and/or distributed by and through the agents and/or representatives of Defendant.

4.02    Defendant was regularly engaged in the business of supplying or placing products, like the Tire in question, in the stream of commerce for use by the consuming public, including Plaintiff.  Further, such conduct was solely for commercial purposes.

4.03    The Tire in question remained unchanged from the time it was originally manufactured, distributed and sold by Defendant until it reached Decedent and ultimately led to his injuries and death.  Stated another way, the Tire in question was defective and in an unreasonably dangerous condition at all times until it ultimately caused the injuries and damages asserted herein.

4.04    At the time the Tire was placed into the stream of commerce, it was, or should have been, reasonably expected and foreseeable that it would be used by persons such as Decedent in the manner and application in which it was being used at the time Decedent suffered his injuries.

4.05    There were no mandatory safety standards or regulatory adopted and promulgated by the federal government or an agency of the federal government that were applicable to the Tire at the time of manufacture and that governed the product risk that allegedly caused harm. Alternatively, the design of the Tire did not comply with mandatory safety standards or regulations adopted by the federal government that were applicable to the product model at the time of the manufacture and governed the risks that caused Decedent's injuries.  Again, in the alternative, in the event that such standards were in effect, and they were complied with, they were nonetheless inadequate to protect the public from unreasonable risks of injury or danger, or the manufacturer, before or after marketing the Tire, withheld or misrepresented the information or material irrelevant to the federal governments or agencies determination of adequacy of the safety standards or regulations at issue in the action.

4.06    With respect to the design of the Tire, at the time it left the control of Defendant, there were safer alternative designs. Specifically, there were alternative designs that, in reasonably probability, would have prevented or significantly reduced the risk of injury to Decedent.

Furthermore, such safer alternative designs were economically and technologically feasible at the time the product left the control of the Defendant by the application of existing or reasonably achievable scientific knowledge.

4.07   At the time the Tire left the control of Defendant, it was defective and unreasonably dangerous in that it was not adequately designed, manufactured or marketed to minimize the risk of injury.  By way of example and without limitation, the Tire was unreasonably and dangerously defective in the following ways:

    a.    improper adhesion of the steel belts to surrounding material resulting in tread belt separation and catastrophic failure during normal use;

    b.    failure to incorporate nylon overlays, nylon belt edge layers, nylon safety belts, gum edge strips, spiral wraps or other similar available counter-measures to reduce the hazard of tread belt separation;

    c.    failure to incorporate an adequate belt edge wedge to reduce or eliminate belt edge separation and tread belt separation;

    d.    failure to incorporate adequate steel to rubber bonding ("skim stock");

    e.    lack of proper antioxidants and antiozonants to prevent aging of the rubber compounds;

    f.    failure to incorporate an effective inner liner;

    g.    failure to incorporate a proper anti-degradant package;

    h.    absence of warnings or contained defective and inadequate warnings with respect to the dangers resulting in its use and the likelihood of loss of control of the vehicle in the event of a tread separation;

    i.    use of over-age rubber stock;

    j.    exposure of materials to moisture during the manufacturing process;

    k.    swabbing of rubber materials with solvent;

    l.    improper handling of belt wire;

    m.    improper repairs, including but not limited to, puncturing of finished tires with awls; and

    n.    improper splices and improperly placed cords.

4.08    The above acts or omissions by Defendant were a producing and/or proximate cause of the injuries and damages suffered by Plaintiff.

## V.
## DAMAGES

5.01    As a proximate result of the negligence of Defendants as described above, Plaintiff Silke Broussard, as the surviving mother of Liam Brown and statutory beneficiary under the Wrongful Death Statute, is entitled to bring this cause of action for all damages that she has suffered as a result of the wrongful death of Liam Brown pursuant to Section 71 of the Texas Civil Practice and Remedies Code (the "Wrongful Death Statute").  Such wrongful death damages include Plaintiff's pecuniary loss, meaning the loss of care, maintenance, support, household services, advice, counsel and reasonable contributions of a pecuniary value that she would, in reasonable probability, have received from Liam Brown had he lived; Plaintiff's loss of companionship and society, meaning the loss of the positive benefits flowing from the love, comfort, companionship, and society that she would, in reasonable probability, have received from Liam Brown had he lived; Plaintiff's mental anguish, meaning the emotional pain, torment, and suffering experienced by Plaintiff because of the death of Liam Brown and Plaintiff's loss of inheritance resulting from the death of Liam Brown.

5.02    Plaintiff also seeks to recover all damages under the Texas Survival Statute, including medical, funeral and burial expenses, pain and suffering, and mental anguish of Liam Brown before his death.

## VI.
## PRE-JUDGMENT AND POST-JUDGMENT INTEREST

6.01    Plaintiff claims pre-judgment and post-judgment interest at the maximum rate allowed by law.

## VII.
## JURY DEMAND

7.01    Plaintiff respectfully requests that the Court impanel a jury to decide all fact issues in this case.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer this Complaint and that upon final hearing, Plaintiff recover judgment against Defendant for his damages as they appear at trial hereof together with costs of court, pre-judgment and post-judgment interest, and for such general and equitable relief as Plaintiff may be entitled.

Respectfully Submitted,

*/s/ James L. Mitchell*
**JAMES L. MITCHELL**
State Bar No. 14214300
Jim@PayneMitchell.com
**PAYNE MITCHELL LAW GROUP**
3500 Maple Avenue, Suite 1250
Dallas, Texas 75219
214/252-1888 Telephone
214/252-1889 Facsimile

ATTORNEY FOR PLAINTIFF